### RENNEKER v. WARREN.

1. In case of a disputed claim to land not in the actual possession of either party, but held by both under color of title, the well-established principle in this state is, that the older title must prevail.
2. An admission against interest, as to whose title is the older, made, after a comparison of papers, by an owner of land at the time of a survey of lines between his own and adjoining lands, would be competent evidence against himself and his privies and successors.
3. But such admission made by a subsequent owner two years before his purchase is the admission of a stranger, and is not competent evidence against his alienees upon a question of disputed title afterwards at issue.
4. Declarations made by one professing to be an agent are not admissible in evidence against the alleged principal until the agency is established by proof.

Before KERSHAW, J., Orangeburg, May, 1881.

Action by Elizabeth C. Renneker and J. H. Renneker, Jr., her husband, against Auken Warren. Verdict was for defendant. The plaintiffs moved for a new trial on the minutes, and that being refused appealed to this court. Upon the points decided by this court the case is fully stated in the opinion.

Messrs. *Walker & Bacot, Lord & Inglesby,* and *J. F. Izlar,* for appellants.

Mr. *Jeff. Warren,* contra.

April 17, 1882. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. This action was tried at the May Term of the court, 1881, for Orangeburg county, the venue having been changed to that county from Colleton. It is an action to recover a tract of land lying in Colleton county, containing three hundred and ten acres, some fifteen or twenty of which are enclosed and in cultivation, the remainder being uninclosed and adjoining. As we understand the facts, the trial below, from which this appeal comes, was the third trial, the verdict being for the defendant in each.

The plaintiff connected herself with a grant from Governor William Moultrie to David Coalter for twenty-three thousand five hundred acres, dated in 1793. She was in the actual possession of a part of this grant and claimed to its full extent. The land in dispute is in the lines of this grant.

The defendant introduced a paper title executed to him in 1867 by Harriet and L. B. Stewart. This deed called for one hundred acres, more or less, bounded on the north by Jennings, east by the same, south by Campbell, and west by Jennings. These boundaries, it is stated, will be satisfied, whether the lines be run to include one hundred acres or three hundred and ten. The occupancy of the land in dispute, according to the testimony of the defence, commenced some forty-five years before the trial. The Robertsons cleared the field, now enclosed, about that time. Then one Robertson went into possession, and after being in the possession of two or three parties, in some way not clearly explained, it finally came into the hands of Duncan Stewart some two or three years before his death, which took place in 1850. The evidence does not show whether these successive parties claimed from each other, or how Stewart obtained possession. It was at length sold, however, by the Stewarts to the defendant in 1867, and the defendant since then has been in the actual possession of the enclosed fifteen or twenty acres—during this time cutting wood, getting rails and clapboards beyond the enclosure, as it suited him.

It is admitted that the defendant has been in the actual possession of the enclosed portion long enough to protect him under the statute of limitations, and the real contest is over that portion outside of the enclosure, to wit, some two hundred and eighty-five acres. Both parties claim it by being in possession of a part and color of title over the remainder. In such case the well-established principle in this state is that the oldest and best title as to the portion of which each is seized will prevail, and will carry with it the part in dispute. It was said in *Sims* v. *Meacham,* 2 *Bail.* 101, "that where there are interfering claims to land, without any actual possession of the disputed parcel, the possession shall be adjudged to him who has the

right." In *Alston* v. *Collins*, 2 *Spears*, 459, it was held that where there are two possessions in the same body of land, one under a senior and another under a junior grant, the senior title will prevail.

Now, these parties claimed under grants : the plaintiff under the Coalter grant, dated in 1793; and the defendant under a grant, the existence of which was presumed from the long possession of himself and those under whom he claimed, but which had been lost or mislaid. The principle that successive possessions of parties claiming from one to the other for a period of twenty years and over will raise the presumption of a grant is not denied. And although it is denied that there is satisfactory evidence in the case of a continuous and successive possession by conveyances from the Robertsons forty-five years ago down to the defendant in 1867, yet there is no doubt that the possession of the Stewarts and of the defendant has been long enough, independent of the prior possession, to found the presumption of a grant. The defendant relied on this grant.

Under this status, the important question before the jury was, Which of the parties had the senior grant ? This being a question of fact, the judge made no ruling upon the subject; but the plaintiffs' first exception assigns error to the judge in admitting certain testimony bearing upon that question.

Paul Warren, a witness for defendant, was permitted to testify that at some time when a survey was made by Mallard and Gavin, the adjoining landowners being present, to wit, Smiley, Robert Black, Stewart, Padget, and John T. Jennings as the representative of his father, John S. Jennings, " that they compared papers, and that Smiley's, Stewart's, and Black's outdated the others. Stewart claimed two tracts—the one he was living on and the tract in dispute." The jury, no doubt, based their verdict to a great extent on this testimony. Mallard and Gavin were running the Coalter grant, and this testimony was introduced to show that the Jennings papers, under which plaintiff claimed, were junior to Stewart's, under which the defendant claimed ; that the Coalter grant produced by the plaintiff was junior to the one of which the long possession of those under whom defendant claimed furnished the evidence of a prior

issue. This testimony was objected to by the plaintiff upon several grounds : *First.* Plaintiff objects that at the time of the Mallard and Gavin survey, when this comparison of papers was made, John S. Jennings was not the owner of any portion of the Coalter grant, and was not, therefore, in a position to make admissions as to title derived therefrom, even had he been present at that survey. *Second.* That John S. Jennings was not present at this survey, and that it was error in the Circuit judge to permit the witness, Paul Warren, to testify that John T. Jennings, the son of John S., was present claiming to be the representative of his father, and that he admitted that the Stewart papers were the oldest, there being no other evidence that John T. Jennings was agent, except his statement made at that time.

The purpose of this survey, as we understand it, was to run the lines of the Coalter grant, and to determine these lines with reference to adjoining owners. Any admission made by an adjoining owner under such circumstances, with papers present and compared, would not only be competent as to the dates of such papers between the parties, but would be binding upon all privies and successors. And if it had appeared in this case that John S. Jennings was at the time of this survey one of the adjoining owners claiming under the Coalter grant, and that he was present either in person or by an authorized agent and made the admission testified to by Paul Warren, then the ruling of his Honor on the subject could not be questioned.

But these important facts seem to be wanting in the evidence. John S. Jennings had not become the purchaser of any portion of this land at that survey. The conveyance to him is dated in 1852, whereas the survey was made in 1850. Under these circumstances, had John S. Jennings himself been present at this survey, we do not see that he could have occupied any other position than a mere stranger, having no power to make admissions or declarations which would be competent testimony in any future proceeding between the parties then present and really interested.

We think, too, that the admission of this testimony was obnoxious to the second objection. The declarations or acts of

an agent within the scope of his agency are the declarations and acts of the principal.   This is familiar law.   But before it can have application in a special case the agency must be estab- lished, and we do not think that this can be done by the decla- rations of the agent himself.   He would be a competent witness. if produced, but his declarations made out of court cannot be· substituted in his stead.

On both the grounds, then, we think that the testimony of Paul Warren on this subject should have been excluded.   This. holding will necessitate a new trial, and it will not be necessary therefore to consider the other questions raised on the appeal. ·

The judgment of this court is that the judgment of the Cir- cuit Court be reversed.